UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON
No. 5:22-CR-91-GFVT-EBA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **Memorandum Supporting** |
| ) | **Defendant's Motion to Dismiss** |
| Plaintiff ) | **Superseding Indictment** |
| ) | |
| vs. ) | |
| ) | |
| CHRISTOPHER GOINS, ) | |
| ) | |
| Defendant ) | |

Count 2 of the superseding indictment should be dismissed based on the doctrine of prosecutorial vindictiveness arising under the Fifth Amendment's due process clause. This doctrine is applicable to Count 2, because defendant exercised constitutional right and moved to dismiss Count 1, which was the sole charge in the original indictment, based on the Second Amendment. Defendant's motion poses a mortal threat to the government's prosecution and caused it to augment the charges against defendant. The scenario raises a realistic likelihood of vindictiveness attaching to the charge added in the superseding indictment. The added charge, a violation of 18 U.S.C. § 924(a)(1)(A), is not based on some newly-discovered or conceived evidence. The superseding indictment, therefore, should be dismissed.

### Statement of the Case

The events giving rise to this case took place on December 4, 5 and 10, 2021. On December 4, 2021, defendant was videotaped examining some firearms at Top Dollar Pawn, a pawn shop and, according to the superseding indictment, a licensed commercial firearms dealer.

1

The following day, December 5, 2021, defendant returned to Top Dollar Pawn with a friend, Jason Tyler Estill, who purchased a firearm, a TNW Firearms, Inc. pistol, model ASP, caliber Multi, SN# M9804. As part of the purchase, Estill completed an ATF Form 4473 attesting that he was the true and accurate purchaser of the firearm.[1] In fact, Estill had been provided the purchase money by defendant. In short, the purchase was a "straw man" purchase. The pawn shop notified ATF of their concerns about the transaction.

ATF Agent James Freeman caught the case. The government has provided in discovery four tape recordings of phone calls made by Agent Freeman in his investigation. Two of the recordings are conversations between Freeman and Estill, one is a conversation between Freeman and defendant and the other one records a voice mail left by Freeman for defendant.[2]

The first recording occurs on December 10, 2021, at 2:09 p.m. according to Agent Freeman's recitation. He states that he is contacting Estill, because Estill "straw purchased" the firearm at Top Dollar Pawn for defendant on December 5, 2021. Ex. 2 – USA53 at 0:15.[3] Slightly more than two minutes into the recording, Freeman informs Estill that Estill lied on the AFT Form 4473 that he was the true, actual buyer of the firearm, that it is a case of "lying and buying" and that Estill could be charged with a felony. *Id*. at 2:15. Freeman asks Estill why he was making the purchase and Estill explains that he possesses a concealed carry license which means that he can complete a same-day purchase of the firearm, a

---

[1] A true copy of the Form 4473, which the government has produced in discovery (USA47-49), completed by Mr. Estill is tendered as Ex. 1 to this memorandum.  The government made available to defense counsel its Rule 16 discovery materials some months before the original indictment in this case was issued. The government has not supplemented its discovery production following issuance of the superseding indictment.

[2] These recordings, which are identified as USA53 – 56 in the government's discovery production, are tendered collectively as Ex. 2 to this memorandum.

[3] This recording is 13:05 in duration. The citations to this recording and others is to the point on the recording at which the relevant statement may be found. Exact precision is difficult, of course, with audio recordings.

fact that Freeman acknowledges. *Id*. at 3:10 – 4:35. Although Freeman presses him hard, Estill twice informs Freeman that he and defendant did not discuss that defendant had a felony conviction and that he did not know defendant had a felony conviction. *Id*. at 3:10, 9:20. Freeman informs Estill, near the end of the conversation, that he intends to retrieve the firearm from defendant and that defendant will "be lucky if I don't indict him." *Id*. at 11:15.

Estill repeated to Freeman in a subsequent recorded conversation that he didn't "have any idea was this felony's for." Ex. 2 – USA54 at 2:30. Freeman warns Estill, "you don't want to catch a felony man." *Id*. at 1:47.

Later that same day, December 10, 2021, Freeman spoke on the phone with defendant; the recording is 4 minutes 23 seconds in duration. Defendant agrees to meet Freeman in the parking lot of the Sportsmans Warehouse in the Hamburg area of Lexington at 10 a.m. the next day and deliver the firearm to him. Ex. 2 – USA56 at 1:20. Defendant affirmed to Freeman that he got Estill to purchase the firearm because he knew he couldn't, and he knew that Estill had a concealed carry license and could complete the purchase the same day. *Id*. at 2:06 – 2:45. Defendant affirmed that he did not discuss with Estill any prior felony convictions and that he did not tell Estill that he could not complete the purchase of the firearm. *Id*. at 2:40 – 2:50.

The government had the firearm in hand and all the pertinent evidence by December 11, 2021.

Although defendant willingly returned the firearm to Agent Freeman and had no history of gun crimes or violence, the United States, nevertheless, decided to charge and prosecute defendant. The U.S. Attorney's office contacted the Court, which appointed the undersigned defense counsel to represent defendant in the pre-indictment stage. A letter dated March 8, 2021, from Magistrate Judge

Stinnett notifying defendant of counsel's appointment is tendered as Ex. 3 to this memorandum.

The government, without any request from defendant or counsel, produced its discovery materials to defense counsel in March 2021. *See* Ex. 4 (email correspondence between prosecutor and defense counsel). The government has not made any supplemental production.

For reasons not completely known no contact was made with defendant. Defense counsel followed up on Judge Stinnett's letter with one of his own, but it was returned and marked not deliverable. It appears that this occurred because the Hope Center on Loudon Avenue was acting to protect defendant's confidentiality and neither the Court nor defense counsel were on his correspondence list. In any event, no contact was made with defendant.

The government obtained the original indictment on August 4, 2022, and it charged a single offense, a violation of 18 U.S.C. § 922(g)(1). Indictment, R. 1.

The key and case-altering event in this chronology was the Supreme Court's decision on June 23, 2022, in *New York St. Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022). *Bruen* altered the Second Amendment landscape and provided defendant with a Second Amendment defense to the charge; it also imposed a heavy and, defendant contends, uncarriable burden on the government to justify its prosecution of defendant.

Defendant filed his motion to dismiss the indictment based on the Second Amendment and *Bruen* on September 7, 2022. R. 15, 15-1. The government responded on September 21, 2022, R. 16, and defendant replied on October 5, 2022. R. 19.

The Court then ordered additional briefing observing that the government, "the party bearing the burden of presenting the Court with historical analysis has only done so in brief" and directing "further briefing from the United States on

whether the history and tradition surrounding the Second Amendment justifies disarming both violent and non-violent felons." Order, R. 20, ##86-87.

The government filed a supplemental memorandum, R. 21, and conceded in it that defendant's criminal record qualifies him as a non-violent felon for purposes of *Bruen* analysis. Govt. Supp. Memo at p. 5. The government again failed – because it is impossible – to offer historical analogues to justifying its 922(g) prosecution of defendant. *Supplemental Reply Memorandum Supporting Defendant's Motion to Dismiss*, R. 21.

Six days after filing its supplemental memorandum, even before time for defendant to file his reply thereto had lapsed, the government obtained the superseding indictment and added the 18 U.S.C. § 924(a)(1)(A) charge against defendant. R. 22.

## Argument

**The Superseding Indictment Should be Dismissed because the 922(g)(1) charge is barred by the Second Amendment and the 924(a)(1)(A) charge added in the superseding indictment is barred by the due process clause and the doctrine of vindictive prosecution**

### A. The charge of violating 18 U.S.C. § 922(g)(1) is barred by the Second Amendment

Defendant has presented his argument on this point in his prior filings: *Defendant's Motion to Dismiss*, R. 15; *Memorandum Supporting Defendant's Motion to Dismiss*, R. 15-1; *Reply Memorandum Supporting Defendant's Motion to Dismiss*, R. 19; and *Supplemental Reply Memorandum Supporting Defendant's Motion to Dismiss*, R. 26.   They are relied upon and incorporated here.

### B. The doctrine of prosecutorial vindictiveness

The doctrine of prosecutorial vindictiveness applies the Due Process Clause to prohibit "the prosecution from punishing a defendant for exercising a

protected statutory or constitutional right," *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013). While, as a general matter, a prosecutor has broad discretion as to charging decisions, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982), *quoting Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).

The well-spring for the doctrine of prosecutorial vindictiveness is *North Carolina v. Pearce*, 395 U.S. 711 (1969). In *Pearce*, the Court held that a trial court judge could not resentence a defendant to a longer sentence than originally imposed where the defendant secured on appeal a reversal of his original conviction but was convicted on retrial and resentenced, unless there was objective, on-the-record facts showing conduct occurring after the initial sentencing. *Id*. at 726. The Court offered two rationales for its rule: (1) vindictiveness toward a defendant for successfully attacking his first conviction may have no role in resentencing; and, (2) since the fear of vindictiveness may chill a defendant's right to appeal or collaterally attack his conviction, "due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id*. at 725.

A later and instructive case from the Supreme Court is *Blackledge v. Perry*, 417 U.S. 21 (1974). In *Blackledge*, a defendant was convicted on a misdemeanor assault charge in a state court of limited jurisdiction, one apparently similar to the Commonwealth's district courts. The defendant then exercised his statutory right to appeal to a trial *de novo*. *Id*. at 22. The prosecutor responded by adding a more serious felony assault charge against the defendant. *Id*. at 23. The Court observed that the prosecutor had a "considerable stake" in deterring defendants from appealing for a trial de novo since such an appeal

would require increased expenditures of prosecutorial resources and may even result in the defendant going free. *Id.* at 25.

The leading Sixth Circuit case regarding prosecutorial vindictiveness is *United States v. Andrews*, 633 F.2d 449 (6th Cir. 1980)(*en banc*). In *Andrews*, three defendants were jointly indicted on charges on drug and firearms offenses. *Id.* at 450-51. The government opposed the pretrial release of two of the defendants, and a magistrate judge denied them bail. *Id.* at 451. The two appealed the detention order to the district judge, who ordered them released. *Id.* Two days later, the government obtained a superseding indictment adding a drug conspiracy count to the charges. *Id.* The added conspiracy charge "encompassed the same basic conduct for which the defendants had been originally charged." *Id.* at 452.

The Sixth Circuit established the following test for prosecutorial vindictiveness: "whether, in the particular factual situation presented, there existed a 'realistic likelihood of vindictiveness' for the prosecutor's augmentation of the charges." *Id.* at 453. Two factors were identified to drive this assessment: (1) the scope of the prosecutor's "stake" in deterring the defendant's exercise of his right, whether statutory or constitutional, *Id.* at 454; and (2) the nature of the prosecutor's conduct and the degree of vindictiveness it suggests. *Id.* The Sixth Circuit offered that adding a charge after a defendant exercised a right as opposed to substituting a more severe charge "is arguably acting less vindictively ... [but] there is no *per se* rule here." *Id.* The district court is to make an objective assessment of whether there exists a reasonable likelihood of vindictiveness. *Id.* Upon such a finding, the "burden of disproving it is on the government." *Id.* at 456. "[O]nly objective, on-the-record explanations can suffice to rebut a finding of realistic likelihood of vindictiveness." *Id.* Two examples of such an explanation would be newly-discovered evidence, or previous legal impossibility. *Id.* n. 10. If

the finding of a realistic likelihood of vindictiveness is not rebutted by the government, the remedy "is to bar the augmented charge." *Id*. at 455.

A more recent application of the doctrine of prosecutorial vindictiveness is *United States v. LaDeau*, 734 F.3d 561 (6th Cir. 2013). The defendant was indicted on a single charge of possessing child pornography. *Id*. at 564. After the defendant moved successfully to have the government's evidence suppressed, it obtained a superseding indictment charging him with conspiracy to receive child pornography, a charge carrying a greater mandatory minimum sentence. *Id*. The evidence regarding the conspiracy offense "had been in the government's possession since before the original indictment." *Id*.

The Sixth Circuit affirmed the district court's dismissal of the superseding indictment. It refined the relevant inquiry as follows: "[i]f a defendant establishes that (1) the prosecutor has some stake in deterring the defendant's exercise of his rights and (2) the prosecutor's conduct was somehow unreasonable, then the district court may find that there is a reasonable likelihood of vindictiveness and may presume an improper vindictive motive." *LaDeau*, 734 F.3d at 566, *quoting Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001)(cleaned up some). The government bears the burden of rebutting the presumption with objective, on-the-record explanations such as governmental discovery of previously unknown evidence or previous legal impossibility. *Id*.

The Sixth Circuit explained its affirmance in *LaDeau* as follows. First, the pretrial motion context could provide a sufficient prosecutorial stake to trigger a presumption of vindictiveness. *Id*. at 567. The court rejected the government's contention that the circumstances present precluded the presumption for two reasons. One was "there is little reason to suspect that the prosecutor's view of [the defendant's] case changed significantly between the two indictments, given that the government already possessed all the relevant evidence that supported

the superseding indictment well before procuring the first indictment. *Id.* Second, "the burden that [defendant's] successful suppression motion placed upon the government was significant[,]" since he succeeded in suppressing crucial evidence and eviscerated the government's possession case. *Id.* at 568-69. The defendant's suppression motion was far from routine as "it inflicted a mortal blow" to the government's case. *Id.* at 568. It saddled the government with the government with restarting the prosecution from scratch. *Id.*

The Sixth Circuit also rejected in *LaDeau* the government's reliance on *United States v. Moon*, 513 F.3d 527 (6th Cir. 2008). In *Moon*, the government indicted the defendant on three charges of healthcare fraud, 18 U.S.C. § 1347, which were dismissed on defendant's motion because the indictment omitted the required affecting interstate commerce recitation. *Id.* at 533. The government then repeated this mistake and its superseding indictment was similarly dismissed. *Id.* A second superseding indictment followed and it added a false statements charge, a violation of 18 U.S.C. § 1001. *Id.* The Sixth Circuit in *Moon* rejected the defendant's prosecutorial vindictiveness argument regarding the false statements charge because the burden on the government was too insignificant. *Id.* at 535-36. As explained in *LaDeau*, all that happened in *Moon* was cured by "making minor adjustments to the language of the indictment and carrying on with the same substantive counts as before." 734 F.3d at 569. *Moon* provides no more support for the government here than it did in *LaDeau*.

The facts here establish a reasonable likelihood of vindictiveness and a presumption of prosecutorial vindictiveness. First, Goins' motion to dismiss the sole count in the original indictment is indisputably an exercise of a constitutional right. Second, the government has a substantial stake in deterring the filing of this type of motion. As evidenced by the Court's order for supplemental briefing, defendant's motion has imposed a substantial burden on

the prosecution. Furthermore, if Goins succeeds, his motion, like the motion in *LaDeau*, will eviscerate the government's case against him as to Count 1 and force the government to start anew on a new theory, which it has done by adding the charge in the superseding indictment. If the government can have a sufficient stake in deterring appeal of a detention order, it surely must be deemed to have a substantial stake in deterring Goins' motion.

The government has acted unreasonably. The added charge is not based on any newly-obtained or discovered evidence. The government has not produced any new discovery since the superseding indictment was issued; indeed, the government produced all its evidence months before the original indictment was obtained. That evidence includes the 4473 form that is the basis for the added charge; it also includes the audiotaped interviews of defendant and his alleged accomplice, Estill, in which they confirm the agent's description of the purchase as a "straw" purchase and he informed Estill that he was subject of that charge. This isn't a case where new evidence has arisen or the light went on regarding the added charge.

The added charge appears to carry the same penalty as the original charge. The sentencing guidelines' statutory index for both 18 U.S.C. § 922(g)(1) and § 924 directs to U.S.S.G. § 2K2.1(a)(4)(B). Section 2K2.1(a)(4)(B) establishes a base offense level for both charges of 20. The government seeing defendant's motion open a hole in its prosecution has sought to plug by adding the charge in the superseding indictment.

### Conclusion

The superseding indictment should be dismissed. Count 1 should be dismissed for the reasons stated in *Defendant's Motion to Dismiss*, R. 15; *Memorandum Supporting Defendant's Motion to Dismiss*, R. 15-1; *Reply Memorandum Supporting Defendant's Motion to Dismiss*, R. 19; and,

*Supplemental Reply Memorandum Supporting Defendant's Motion to Dismiss*, R. 26.

Count 2 should be dismissed based on the doctrine of prosecutorial vindictiveness as set forth in the foregoing.

> Respectfully submitted,
>
> BY:  s/Robert L. Abell
> ROBERT L. ABELL
> 120 N. Upper St.
> Lexington, KY 40507
> 859-254-7076 (phone)
> 859-281-6541 (fax)
> E-mail: Robert@RobertAbellLaw.com
> COUNSEL FOR DEFENDANT
> CHRISTOPHER GOINS

## Certificate of Service

I certify that on November 17, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to the following:  All Counsel of Record.

> BY:  s/Robert L. Abell
> Robert L. Abell
> COUNSEL FOR DEFENDANT