UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 5:22-cr-00091-GFVT-MAS-1 |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| CHRISTOPHER GOINS, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court on Defendant Christopher Goins's Motion to Dismiss the Superseding Indictment.  [R. 28.]  Because the law does not allow Mr. Goins, a convicted felon, to possess a firearm, he had a friend, Jason Estill, buy a gun for him and claim to be the weapon's true purchaser on a form required by the Bureau of Alcohol, Tobacco, Firearms, and Explosives.  Allegedly, that was a lie that he concocted.

When the Government learned about Mr. Goins's plot, it charged him with a violation of felon in possession of a firearm.  Mr. Goins moved to dismiss that charge.  While the Court considered his motion, the United States charged Mr. Goins with another crime, making a false statement on an ATF form.  Mr. Goins asserts that the prosecutor acted vindictively, punishing him for asserting his legal rights.  Essentially, Mr. Goins asks whether a prosecutor behaves vindictively by adding a back-up charge out of fear that an initial indictment will be dismissed. Because Mr. Goins's scheme to mislead the ATF and his illegal possession of a firearm are two acts amounting to two offenses, the prosecutor acted within her discretion, and his Motion to Dismiss the Superseding Indictment **[R. 28]** is **DENIED**.

**I**

On December 4, 2021, Christopher Goins went to Top Dollar Pawn, a licensed commercial firearms dealer, to look at some weapons.  [R. 28-1 at 1.]  The next day, he returned with a friend, Jason Tyler Estill, who purchased a pistol.  *Id.* at 2.  The pawn shop required Mr. Estill to complete ATF Form 4473 as part of the purchase, and Mr. Estill wrote that he was the true purchaser of the firearm.  *Id.*  However, Mr. Goins provided the purchase money to Mr. Estill, who was merely a straw purchaser.  *Id.*

After the pawn shop notified the ATF that it had concerns about the transaction, the ATF assigned Agent James Freeman to the case.  *Id.*  Agent Freeman recorded four phone calls between himself and either Mr. Estill or Mr. Goins.  *Id.*  On a call, Mr. Goins admitted that he arranged for Mr. Estill to purchase the firearm for him because he was unable to do so.  *Id.* at 3.  He also agreed to meet with Agent Freeman to surrender the gun.  *Id.*

By December 11, 2021, the Government had in its possession all the evidence that it would marshal against Mr. Goins.  Specifically, it had his recorded statement, the firearm, and the fraudulent ATF Form 4473.  *See id.*  A few months before the grand jury issued an indictment in this case, the Government provided its Rule 16 discovery material to Mr. Goins's attorney, which included the Form 4473 completed by Mr. Estill.  [R. 28-1 at 2 n.1, 4; R. 28-5.]  The Government issued no subsequent, supplemental discovery.  [R. 28-1 at 4.]

On August 4, 2022, the United States indicted Mr. Goins on one count of possessing a firearm in violation of 18 U.S.C. § 922(g)(1).  [R. 1.]  The United States offered a plea bargain to Mr. Goins by emailing his attorney on August 30.  [R. 30-1.]

Mr. Goins did not respond to that offer.  Instead, he moved to dismiss the indictment on September 7, 2022, bringing an as applied challenge to the statute under a newly decided

Supreme Court case.  [R. 15-1 at 2 (citing *New York State Rifle & Pistol Assoc. v. Bruen*, 142 S. Ct. 2111 (2022).]  Because of the pending motion to dismiss, Mr. Goins moved to continue trial, and the Court set a new trial date in December of 2022.  [R. 17; R. 18.]  The parties completed their briefing on the motion to dismiss on October 5.  [R. 19.]

However, the Court found the briefing to be insufficient to decide the matter because *Bruen* required the Government to present the Court with history that supports Section 922(g)(1). [R. 20 at 4.]  Because the Government had only done so in brief, the Court ordered additional briefing, which the Government submitted on October 28.  *Id.* at 3–4; [R. 21.]

Six days later, the prosecutor obtained a superseding indictment and brought an additional charge against Mr. Goins.  [R. 25.]  Count II of the superseding indictment alleges that Mr. Goins "aided and abetted another to knowingly make a false statement and representation to Top Dollar Pawn . . . in that the individual who was not the actual buyer of the firearm identified in Count 1 of this Indictment was represented as the actual buyer in the [ATF] Form 4473" in violation of 18 U.S.C. § 924(a)(1)(A) and 18 U.S.C. § 2.  *Id.* at 3.  Mr. Goins then filed the instant motion, arguing that the superseding indictment should be dismissed under the doctrine of prosecutorial vindictiveness.  [R. 28.]

## II

While prosecutors have discretion in deciding which charges to bring against a defendant, they must behave within Constitutional limits.  *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013).  The Due Process Clause prohibits the Government "from punishing a defendant for exercising a protected statutory or constitutional right" by bringing additional charges against the defendant.  *Id.*  To that end, the doctrine of prosecutorial vindictiveness evolved as a prophylactic rule.  *See North Carolina v. Pearce*, 395 U.S. 711, 725 (1969); *see also United*

*States v. Andrews*, 633 F.2d 449, 451 (6th Cir. 1980) (en banc).  It seeks not only to prevent the Government from retaliating against defendants' lawful assertion of rights, but also to protect them from "the fear of such vindictiveness" so that they will not be deterred from exercising their rights.  *United States v. Goodwin*, 457 U.S. 368, 373–74 (1982).

If a defendant asserts a protected right and the Government then charges him in a subsequent indictment,[1] a court can dismiss the indictment if a defendant shows "actual vindictiveness" or a "realistic likelihood of vindictiveness" based on the particular facts of the case.  *LaDeau*, 734 F.3d at 566.  Actual vindictiveness requires the defendant to prove with objective evidence that the prosecutor's motive was to punish the defendant for exercising his legal rights.  *Id.*

Alternatively, the defendant can demonstrate a realistic likelihood of vindictiveness without requiring a court to undertake the unseemly task of prying into a prosecutor's subjective intentions.  *Andrews*, 633 F.2d at 455 ("If the standard to be applied was proof of actual vindictiveness, a trial judge would have the Hobson's choice of either not barring the extra charge or of saying that a prosecutor acted wrongly. . . . We do not think that such confrontations before the judiciary and the executive branch are desirable.").  To evaluate these claims, courts assess the prosecutor's conduct from the objective perspective of a reasonable outside observer.  *Id.* at 454.  Doing so ensures that defendants can freely exercise their rights without requiring a court to accuse a particular prosecutor of bad faith behavior.  *See Goodwin*, 457 U.S. at 376.

District courts have discretion to find a realistic likelihood of vindictiveness.  *LaDeau*, 734 F.3d at 565.  To do so, the Court must scrutinize the circumstances involved because "[e]ach

---

[1] Naturally, to bring a claim for prosecutorial vindictiveness, Mr. Goins must first demonstrate that "the allegedly vindictive government action occurred following the exercise of a protected right."  *United States v. Moon*, 513 F.3d 527, 535 (6th Cir. 2008).  In this case, the parties do not dispute that Mr. Goins exercised a protected right through his first motion to dismiss the indictment.  [R. 28-1 at 9; R. 30 at 4.]

situation will necessarily turn on its own facts." *Id.* at 567 (quoting *Andrews*, 633 F.2d at 453–54). If the defendant can make a sufficient initial showing, the court presumes an improper vindictive motive, and the Government "bears the burden of rebutting the presumption with 'objective, on-the-record explanations' such as 'governmental discovery of previously unknown evidence' or 'previous legal impossibility.'" *Id.* at 566 (quoting *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001)).

### A

Mr. Goins does not allege actual vindictiveness in this case. Instead, he claims that the course of events leading to his superseding indictment indicate a realistic likelihood of vindictiveness. [R. 28-1 at 9.] To give rise to a presumption of vindictiveness, Mr. Goins must show that: "(1) the prosecutor has some stake in deterring the . . . exercise of his rights and (2) the prosecutor's conduct was somehow unreasonable." *LaDeau*, 734 F.3d at 566 (quoting *Bragan*, 249 F.3d at 481). The Court assesses each in turn.

### 1

Generally, prosecutors do not have a sufficient stake in pre-trial proceedings to indicate a realistic likelihood of vindictiveness. At this stage, a prosecutor might find new evidence that suggests a basis for an additional charge, or she might realize that the evidence on hand has "a broader significance." *Goodwin*, 457 U.S. at 381. During pre-trial, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized." *Id.* "In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted." *Id.*

But prosecutorial vindictiveness can be found in some pre-trial circumstances. *LaDeau*, 734 F.3d at 567. To find that the prosecution had a stake in the outcome of Mr. Goins's motion, the Court assesses (1) whether the prosecutor's view of the case changed significantly between the two indictments and (2) whether Mr. Goins's motion to dismiss the indictment imposed a significant burden on the prosecutor. *Id.* at 568.

**a**

First, there is little objective evidence that indicates that a change in the prosecutor's theory of the case motivated the superseding indictment. Prosecutors have discretion in deciding which charges to bring. *Id.* at 566. They need to remain free to exercise that discretion up to the point of trial because "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Goodwin*, 457 U.S. at 382.

But a likelihood of vindictiveness can arise where the only substantive development in the case between two indictments is a motion that threatens to unravel the prosecutor's case. *See LaDeau*, 734 F.3d at 568. If the Government already possessed all the evidence relevant to the superseding indictment when it brought the original indictment, the absence of a subsequent development in the case gives "little reason to suspect that the prosecutor's view of [the] case changed significantly between the two indictments . . . ." *Id.* The key difference between a valid charging decision and presumptively vindictive conduct is whether the prosecutor has already exercised discretion in declining to bring a charge for which she already had evidence. *See Andrews*, 633 F.2d at 453 ("Unlike a situation where a prosecutor could argue that he forgot to add an additional count where a defendant committed multiple criminal acts," a prosecutor cannot respond to the assertion of a right by bringing "a felony charge only after he exercised his discretion to simply charge the defendant with a lesser offense . . . .").

6

Here, the superseding indictment charged Mr. Goins with violating 18 U.S.C. § 924(a)(1)(A).  To illustrate the point, the Eleventh Circuit would require the Government to prove beyond a reasonable doubt that: (1) Mr. Goins aided and abetted the entry of a false statement or representation on Form 4473; (2) to a federally licensed firearms dealer; and (3) he knew that the statement or representation was false.  *See* Pattern Crim. Jury Instr. 11th Cir. OI 35.1 (2020).[2]

Not only did the Government possess evidence of this crime before it brought the initial indictment, but it also only learned of Mr. Goins's potential violation of the felon in possession law because of the false statements on Form 4473.  The Government's information in this case originated from Top Dollar Pawn's tip to the ATF.  [R. 28-1 at 2.]  When an agent followed up on that tip, Mr. Goins readily admitted that he orchestrated Mr. Estill's purchase of the gun and the misrepresentation on the form.  *Id.* at 3.  Accordingly, before he ever took possession of the firearm, Mr. Goins committed the crime of making a false representation on an ATF form.

More importantly, before it ever charged him with felon in possession, the Government had all the proof it needed to indict Mr. Goins for the false statement.  The Government had his recorded admissions and the fraudulent ATF form in December of 2021.  [R. 28-1 at 3.]  It provided this evidence to defense counsel months before it brought the initial indictment in August of 2022.  [R. 28-1 at 2 n.1, 4; R. 28-5.]  It never produced a single, additional piece of discovery.  [R. 28-1 at 4.]  Indeed, the only objectively verifiable events that occurred between

---

[2] Here, the Court uses a version of the Eleventh Circuit's pattern jury instructions modified by the superseding indictment's inclusion of 18 U.S.C. § 2.  [R. 25.] 18 U.S.C. § 924(a)(1)(A) creates the principle criminal law that Mr. Goins allegedly violated.  18 U.S.C. § 2 makes Mr. Goins liable, as a principal, for aiding and abetting Mr. Estill in violating that law.

The Sixth Circuit does not have pattern jury instructions for 18 U.S.C. § 924(a)(1)(A).  The Eleventh Circuit's instructions are used only to reflect the relevance of the evidence that the United States possessed prior to obtaining the initial indictment.  They are not necessarily the Court's jury instructions for this case, which will be finalized in the context of trial.

the initial indictment and the superseding indictments were Mr. Goins's assertion of his Second Amendment rights and this Court's order that the Government submit further briefing on the issue. [*See* R. 15–R. 27.]

Against this, the Government claims that, after the Court continued trial in response to Mr. Goins's motion to dismiss, the prosecution was able to reassess the available evidence and recalibrate its strategy. [R. 30 at 7–8.] However, the record is not entirely consistent with this characterization of events. After Mr. Goins moved to dismiss the initial indictment, the Court continued trial from October to December to permit time to brief and consider the dismissal motion. [R. 18.] The Government did not bring the superseding indictment in the immediate aftermath of the continuance. The new charges came after the Court ordered the Government to submit additional briefing on Mr. Goins's Second Amendment claim, nearly a month and a half after the continuance. [R. 22; R. 20; R. 18.] To a member of the public, the additional charges may appear to be more connected to the additional briefing, rather than to the continuance, as the closest event on the record. As such, the indictment bears a potential retaliatory appearance that outweighs the Government's subjective explanation regarding the motion to continue. *See LaDeau*, 734 F.3d at 571 (the Government's subjective explanations were insufficient where it could not "persuasively demonstrate[] that the evidentiary landscape ha[d] materially altered.").

Accordingly, "there is little reason to suspect that the prosecutor's view of [Mr. Goins's] case changed significantly between the two indictments, given that the government already possessed all of the relevant evidence that supported the superseding indictment well before procuring the first indictment." *Id.* at 568. Based on an objective assessment of the record, the most likely conclusion is that the prosecutor exercised her discretion and declined to charge Mr. Goins with making a false statement on an ATF form when she brought the initial indictment.

8

As such, the record suggests that the prosecutor had a stake in deterring Mr. Goins's motion to dismiss the initial indictment.

**b**

Second, Mr. Goins's motion to dismiss placed a significant burden on the Government. The likelihood that a charge is vindictive increases proportionately to the "burden that the defendant's conduct has placed on the prosecution." *LaDeau*, 734 F.3d at 569. A prosecutor has a stake in discouraging the exercise of a right where it could lead to "increased expenditures of prosecutorial resources" or where it could lead to "a formerly convicted defendant going free." *Goodwin*, 457 U.S. at 376.

However, not all motions place a cognizable burden on the prosecution. Defendants inevitably invoke some procedural rights that impose a burden on the prosecutor. *Id.* at 381. There can be no reasonable likelihood of vindictiveness where "the additional burden on the prosecution from the motions in proportion to the burden for the upcoming trial itself [was] rather minimal." *LaDeau*, 734 F.3d at 568 (quoting *United States v. Suarez*, 263 F.3d 468, 479–80 (6th Cir. 2001)). As such, routine motions, like motions to suppress, motions challenging the sufficiency of the indictment, and even some motions to dismiss, do not give rise to a likelihood of vindictiveness because they are ancillary to the burden that the Government carries to try any case. *See Goodwin*, 457 U.S. at 381; *Suarez*, 263 F.3d at 479–80.

Instead, a motion imposes a burden that indicates a likelihood of vindictiveness if it threatens a prosecutor with something outside of the normal trial routine. *See LaDeau*, 734 F.3d at 569–70. The prosecutor has a significant stake in deterring motions that require duplicative expenditures of resources or that force the Government to redo "what it thought had already been done correctly . . . ." *Id.* (quoting *United States v. Roach*, 502 F.3d 425, 444 (6th Cir. 2007)).

This includes motions that could be fatal to the first indictment, which force the prosecution to start from scratch. *Id.* at 569. If a motion requires the prosecution to do more than make "make minor adjustments to the language of the indictment and carr[y] on with the same substantive counts as before," it creates a cognizable burden for these purposes. *Id.*; *c.f. United States v. Moon*, 513 F.3d 527, 536 (6th Cir. 2008) (insufficient burden where the Government had to return to the grand jury twice but where subsequent charges were identical). Simply put, a motion gives rise to a likelihood of vindictiveness where its success could make convicting the defendant on the original count impossible. *LaDeau*, 734 F.3d at 569.

If Mr. Goins's motion had succeeded, the original indictment would have been irretrievably defeated. Mr. Goins argued that the only charge contained in the original indictment, a violation of 18 U.S.C. § 922(g)(1), was unconstitutional as applied to him. [R. 15.] No attempt at rewording the indictment could have saved it. Had the Court ruled in Mr. Goins's favor, only a successful appeal by the Government would have prevented him from walking free.

Additionally, the work required of the prosecutor to respond to the motion was considerable. To support a law that conflicts with the text of the Second Amendment, the Government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126 (2022). The Government bears the burden of compiling the historical record and briefing the court on its applicability to a modern statute. *Id.* at 2150; *Stevens v. Mich. State Court Admin. Office*, No. 21-1727, 2022 U.S. App. LEXIS 23214, *16 (6th Cir. Aug. 18, 2022). Even with the benefit of the appellate process and considerable briefing, the Supreme Court acknowledges that "[h]istorical analysis can be difficult." *Bruen*, 142 S. Ct. at 2130. There can be little doubt that the same process is also difficult on the trial level.

10

The Government seeks to minimize the burden imposed on it, claiming "the only burden on the government was drafting responses to motions which is common pre-trial practice." [R. 30 at 6.] Setting modesty aside, this claim does not square with reality. After the Government first attempted to draft a response, the Court ordered it to redouble its efforts, finding the initial briefing insufficient to address the Second amendment issue. [R. 20 at 4.] While Mr. Goins ultimately lost the argument, his motion required the prosecution to engage in the difficult process of historical analysis or risk the evisceration of its case. More to the point, the Court's order regarding additional briefing required the prosecutor to redo what she thought she had already done correctly in her first response. *See LaDeau*, 734 F.3d at 569–70.

Mr. Goins's motion to dismiss the initial indictment required difficult and duplicative expenditures of effort by the prosecution. It also threatened to undo the Government's case. Therefore, it posed a cognizable burden on the Government, which indicates that the prosecutor had a stake in deterring Mr. Goins's exercise of his rights.

**c**

To recap, the pre-trial decision to bring additional charges can be presumptively vindictive only if the prosecutor has a sufficient stake in deterring some action by the defendant. *See id.* at 567–68. And the Government had a stake in deterring Mr. Goins, and future defendants like him, from raising a Second Amendment challenge to his felon in possession charge if (1) there is no objective evidence that the prosecutor's view of the case changed significantly between the two indictments and (2) the motion to dismiss imposed a significant burden on the prosecutor.

Given the long span of time between the Government obtaining the entirety of the evidence in this case and bringing the second indictment, the most reasonable interpretation of

11

the record is that the prosecutor likely exercised her discretion and declined to charge Mr. Goins with making a false statement on an ATF form at the beginning of this case. There is no objective evidence in the record to indicate that she suddenly realized, for the first time, his conduct also qualified for that charge when she brought the superseding indictment.

Likewise, Mr. Goins's motion to dismiss placed a significant burden on the prosecution, in that it required more than routine, pre-trial work and it risked dismissing the case. Both factors indicate that the Government had a stake in dissuading Mr. Goins from pursuing his motion to dismiss the initial indictment. However, that stake, alone, is not enough to require a court to take the drastic measure of dismissing an otherwise valid indictment. *See Andrews*, 633 F.2d at 455 (the appearance of vindictiveness, alone, is not enough to trigger due process protections).

**2**

Largely for the same reasons, Mr. Goins alleges that the prosecution acted unreasonably. Although the record at first appears to be in his favor, the Government successfully rebuts the suggestion of vindictiveness with an objective, on-the-record explanation for its charging decision. *LaDeau*, 734 F.3d at 566. While the superseding indictment may seem connected to Mr. Goins's assertion of his rights, that perception yields to the United States' interest in punishing him for conduct unrelated to his Second Amendment argument. Therefore, the motion to dismiss is denied.

First, the likelihood that the prosecution acted unreasonably is increased where it "obtained no evidence supporting the superseding indictment that it did not already possess . . . ." *LaDeau*, 734 F.3d at 570. While the Government can recalibrate its prosecution in favor of a new charging theory, that action can be unreasonable where it could have charged the defendant

with either count from the beginning of the case.  *Id.* at 571.  As discussed at length, the Government had all the evidence it needed to charge Mr. Goins with making a false statement on an ATF form months before it charged him with felon in possession.  [R. 28-1 at 10.]

Second, the likelihood that the prosecution acted unreasonably increases where the additional charge "encompasse[s] the same basic conduct for which the defendants [were] originally charged."  *Andrews*, 633 F.2d at 452; *see also LaDeau*, 734 F.3d at 570.  In this case, the criminal act of possessing a firearm as a felon is intricately linked to Mr. Goins's misrepresentations on the ATF form.  To obtain possession of the gun, Mr. Goins had to encourage Mr. Estill to lie on the form.  On a basic level, the actions that constitute the crimes are similar enough to seem like Mr. Goins is receiving an additional punishment for the same misdeed.  *See Andrews*, 633 F.2d at 454 (a district court must "carefully anlayz[e] the circumstances" to determine objectively "whether a reasonable person would think there existed a realistic likelihood of vindictiveness.").

Upon closer inspection and considering the Government's argument in rebuttal, the relationship between Mr. Goins's actions and his charges creates a critical distinction.  The additional charge stems from conduct for which the law creates a distinct crime from Mr. Goins's prohibited possession of a firearm, and it does not carry a harsher penalty than he originally faced.  This difference rebuts any suggestion that the Government behaved unreasonably.  [R. 30 at 8–9.]

A prosecutor can add additional charges based on independently punishable acts, even if those acts occur during the "same spree of activity," without behaving vindictively.  *United States v. Kendrick*, 682 F.3d 974, 982 (11th Cir. 2012).  Even minor differences in the chargeable conduct can justify a prosecutor's choice.  *Compare United States v. Roach*, 502 F.3d 425, 431,

444–45 (6th Cir. 2017) (no vindictiveness where defendant initially was charged with conspiracy to deprive individuals of their civil rights under color of law and subsequently was charged with accessory after the fact based on no new evidence), *Suarez*, 263 F.3d at 473–74, 480 (no vindictiveness where an initial indictment charged a detective with bribery for a scheme to retain recovered, stolen goods and a superseding indictment added money laundering and bank fraud), *and Kendrick*, 682 F.3d at 982 (no vindictiveness where an initial indictment charged defendant with possession of marijuana with intent to distribute aboard a vessel and a subsequent indictment charged him with alien smuggling), *with LaDeau*, 734 F.3d at 570 (after a motion defeated the Government's case as to possession of child pornography, there was no reasonable basis to bring a receipt of child pornography charge "based on the same conduct underlying the charge in the initial indictment").

While Mr. Goins's deception on the ATF form was closely related to his possession of the firearm, the acts that permitted the Government to punish him for each crime are distinct. 18 U.S.C. § 922(g)(1) is triggered by the act of possessing a firearm that has been transported through interstate commerce. 18 U.S.C. § 924(a)(1)(A) criminalizes making a false statement on a form required to be kept by a licensed firearm dealer. While one act led to the other, each decision by Mr. Goins created a unique, legitimate basis for the Government to charge him with a crime. The distinction may be thin, but it is one that the Sixth Circuit has repeatedly recognized as legitimate.

Moreover, some courts have recognized this distinction to be of heightened importance where the initial charge is susceptible to attack as unconstitutional. In *United States v. Young*, the Government charged Howard Young with embezzlement after he used a client's money to fund a racehorse operation for his daughter. *United States v. Young*, 955 F.2d 99, 101–02 (1st

14

Cir. 1992) (Breyer, C.J.).  When Mr. Young challenged the embezzlement statute as unconstitutionally vague, the United States brought a superseding indictment charging four counts of mail fraud based on misleading accounting reports that Mr. Young sent in connection with the funds.  *Id.* at 107.  On appeal, the First Circuit affirmed a finding of no vindictiveness because "Young's motion to dismiss the charge on the ground that the embezzlement statute was unconstitutional offer[ed] an obvious, and legitimate, reason why the prosecutor would want to add other, less controversial, charges to the indictment."  *Id.* at 108.

The Government offers a similar explanation, here.  Facing the chance that the Court might dismiss the felon in possession charge, the Government brought additional charges that were unlikely to face a constitutional attack.  [R. 30 at 8.]  To an outside observer, one explanation for this behavior might be that the prosecutor wanted to punish Mr. Goins for asserting his Second Amendment rights.  But an equally plausible explanation is that the prosecutor saw no reason to charge Mr. Goins with lying on the ATF form when she thought he would be punished for illegally possessing a firearm.  Were the Court to rule that penalty was unavailable, Mr. Goins still allegedly broke a different, constitutionally sound law.  Accordingly, an outside observer could view the new charge as related to Mr. Goins's additional, underlying criminal conduct, rather than as a retaliation for his assertion of his rights.

Additionally, the fact that the prosecutor pursued a backup charge that does not carry a harsher penalty than the felon in possession charge makes her decision more reasonable.  *Suarez*, 263 F.3d at 480.  "[A] superseding indictment is potentially vindictive only if it 'add[s] additional charges or substitute[s] more severe charges based on the same conduct charged less heavily in the first indictment.'"  *LaDeau*, 734 F.3d at 570 (quoting *Suarez*, 263 F.3d at 480). The parties agree that the new charge does not carry a harsher penalty than the original felon in

15

possession charge.  [R. 28-1 at 10; R. 30 at 9.]  The decision to supersede with an additional, rather than a more severe, charge does not fully insulate the prosecutor from a vindictiveness claim, but it does make her decision more reasonable. [3]  *Andrews*, 633 F.2d at 454.

To some, this result may appear odd.  On the one hand, the prosecutor had a sufficient stake in deterring Mr. Goins's Second Amendment argument to weigh in favor of presumptive vindictiveness.  On the other, the cases allow prosecutors to bring a backup charge if they fear that the original charge might be unconstitutional.  That practice appears to make punishment inevitable.  Why would courts create a doctrine intended to encourage defendants to advocate for their rights while nihilistically accepting that conviction might be the inevitable result?

The answer appears to reflect an internal tension among the decisions that inform the doctrine.  Courts have intentionally applied the presumption of vindictiveness narrowly to accord prosecutors the freedom they need to make pretrial choices.  "The due process principle that defendants not be deterred from exercising their rights is a limited one. . . . [M]any situations present difficult choices for defendants and arguably chill the exercise of a right."  *Andrews*, 633 F.2d at 455.  The stars can very nearly align to support a finding of vindictiveness but not result

---

[3] The Government argues that its decision to add an additional, but not more severe, charge "after the exercise of a procedural right" can never be vindictive.  [R. 30 at 6.]  To do so, it points to the *Andrews* decision:

> A prosecutor who adds on extra charges after the exercise of a procedural right is arguably acting less vindictively than a prosecutor who substitutes a more severe charge for a less severe one.  In the first situation, a prosecutor might well have made an honest mistake.  This is especially true where a defendant has committed multiple criminal acts.  However, in the second situation, the prosecutor will have already exercised his discretion, and the probability that the prosecutor acted vindictively is higher.

*Andrews*, 633 F.2d at 454.  But this is not a *per se* rule.  *Id.*  Rather, a district court must "carefully anlayz[e] the circumstances" to determine objectively "whether a reasonable person would think there existed a realistic likelihood of vindictiveness." *Id.*

True, the Government did not pursue a more severe charge.  But, had the additional charge related only to Mr. Goins's possession of a firearm, careful analysis might still indicate a realistic likelihood of vindictiveness.  For example, had the prosecutor superseded by adding a charge under 18 U.S.C. § 922(g)(6) for possessing a firearm after having been dishonorably discharged from military service, the decision might appear vindictive.

in a dismissal of an indictment.  Small distinctions matter.  In this case, the Government's interest in punishing Mr. Goins for lying on an ATF form is sufficient to outweigh the appearance that the prosecutor acted vindictively.  For these reasons, the Government successfully rebuts Mr. Goins's allegation that the superseding indictment was unreasonable.[4]

### III

Mr. Goins complains of superficially troubling behavior by the prosecutor in this case. As in *LaDeau*, the prosecutor charged him with another crime based on no new evidence. *LaDeau*, 734 F.3d at 570.  Unlike Mr. LaDeau, however, the new charge was based on materially different criminal conduct.  The Government has two, distinct interests in discouraging felons from carrying firearms and preventing the public from lying on official records.  An objective observer could reasonably conclude that the prosecutor brought the new charge out of a legitimate desire to deter fraud on ATF forms rather than to punish Mr. Goins for arguing that

---

[4] The Government offers an additional, less persuasive justification for the additional charge.  It claims that it brought the superseding indictment to induce the defendant to accept a plea.  [R. 30 at 4, 7–8.]

The plea-bargaining process is uniquely immune to claims of prosecutorial vindictiveness, so long as "the accused is free to accept or reject the prosecutor's offer."  *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).  "Because plea bargaining offers a 'mutuality of advantage to defendants and prosecutors' and because the prosecution's ability to threaten a reluctant defendant with heightened charges is a necessary feature of a robust plea bargaining process," prosecutors are free to impose more severe charges after an unsuccessful plea negotiation without fear of a finding of vindictiveness.  *LaDeau*, 734 F.3d at 569 (quoting *Bordenkircher*, 434 U.S. at 363) (internal citations omitted).

However, to be insulated from a claim of vindictiveness, the additional charge must stem from the plea-bargaining process itself.  *Id.* at 569.  The Government cannot unilaterally impose a more severe charge without first engaging the defendant in the give-and-take compromise through which he could negotiate a concession or a benefit.  *Id.*; *Andrews*, 633 F.2d at 456.

It is unclear whether Mr. Goins's superseding indictment is related to a potential plea bargain.  The Government offered Mr. Goins a plea after the first indictment.  [R. 30 at 7; R. 30-1.]  Mr. Goins did not respond to the offer but instead moved to dismiss the indictment.  [R. 30 at 4.]  There is little evidence that Mr. Goins ever engaged in the give-and-take process of plea bargaining nor that he could have ever negotiated a concession or a benefit. Accordingly, the Government's reliance on its plea offer does not fully absolve it of any implication of vindictiveness.

the felon in possession law violated his Second Amendment rights.  Accordingly, for these

reasons, Mr. Goins's Motion to Dismiss the Superseding Indictment **[R. 28]** is **DENIED.**

     This the 23rd day of January 2023.

Gregory F. Van Tatenhove
United States District Judge